UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-377-KKC

BARRY M. HELTON                                                              PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

CHARLEY G. DIXON, ET AL.                                            DEFENDANTS

Before the Court for consideration are various motions to dismiss filed by the defendants in this proceeding, and the *pro se* plaintiff's response to the motions. The motions before the Court are as follows:

(1)    The "Motion To Dismiss" [Record No. 12] filed by counsel for Defendant Denise Crawford, Knox County Trial Commissioner;

(2)    The "Motion for To Dismiss" and "Amended Motion to Dismiss" [Record Nos. 14 and 16] filed by counsel for Defendants Knox Fiscal Court, Tammy Wine, Donna Smith, Ancil Hall, Charley G. Dixon;

(3)    The "Motion for To Dismiss," and "Amended Motion to Dismiss [Record Nos. 18, 19 and 21] filed by counsel for Defendants City of Barbourville, Kentucky; Johnny Mills and unknown Barbourville police officers;

(4)    The Response [Record No. 22] filed by Barry M. Helton, the *pro se* plaintiff, to the defendants' various Motions to Dismiss;

1

(5)     Defendants Knox Fiscal Court, Tammy Wine, Donna Smith, Ancil Hall, and Charley

G. Dixon's "Motion to Strike Plaintiff's Response" [Record No. 23]

(6)     Defendant Denise Crawford's "Motion to Strike Plaintiff's Response" [Record Nos.

24 and 25].

<u>FACTUAL HISTORY</u>

The *pro se* plaintiff is a resident of Hebron (Boone County), Kentucky.  He is an attorney.

He filed his pro se complaint under 42 U.S.C. §§1983 and 1988 on July 14, 2005 [Complaint,

Record No. 1].  Plaintiff alleges that the defendants violated his constitutional rights on July 14,

2004, when they caused him to be falsely arrested without probable cause and maliciously

prosecuted.  He claims that the defendants conspired to maliciously prosecute him, injure his

reputation, and to publicly disgrace him.  Plaintiff seeks $750,000.00 in compensatory damages and

$1,000,000.00 in punitive damages from the defendants.

The named defendants are:  (1)  Denise Crawford, Knox County Trial Commissioner; (2)

Charley G. Dixon, Knox County Attorney; (3)  the Knox County Fiscal Court; (4) Tammy Wine, the

Knox County Treasurer; (5) Donna Smith, a "cold check specialist" employed by the Knox County

Attorney's Office; (6) Ancil Hall, a detective, also a "cold check specialist" employed by the Knox

County Attorney's Office; (7) the City of Barbourville, Kentucky; (8) Johnny Mills, police officer

with the Barbourville City Police Department; (9) unknown Barbourville police officers; and (10)

unknown Knox County 911 Services Employees.  Plaintiff sued the individually named defendants

in both their official and individual capacities.

Summarized, the plaintiff alleges that in the summer of 2004 he was defending his brother, Randy T. Helton, in a criminal matter (DUI offense) pending in the Knox District Court.  The Knox County Attorney's Office was prosecuting Randy Helton.  The plaintiff alleged that the Knox County Attorney's Office reluctantly supplied the plaintiff with "untimely" discovery which he (plaintiff) had requested via a Bill of Particulars on behalf of his brother.  The plaintiff alleges that the Knox County Attorney's Office "displayed great animosity towards plaintiff at relevant time to this [Randy Helton's DUI Criminal] action."  [*Id*., ¶ 20]

The plaintiff alleges that on June 29, 2004, he wrote a check for $25.00 made payable to the Knox County 911 Service.  The check was to cover the expense of obtaining a copy of a 911 phone tape and/or transcript for the plaintiff's use during the trial in which he was defending his brother.  The check number was #1010 and was drawn on the plaintiff's bank account at Fifth Third Bank.  The plaintiff admits that this $25.00 check "bounced," *i.e.*, that he had insufficient funds in his bank account to cover the check [Complaint, ¶ 16].

According to Defendant Denise Crawford, the Knox County Trial Commissioner, the Knox County Attorney's Office mailed the plaintiff a notice in compliance with K. R. S. 514.040(4)(b),[1]

---

[1]

(4) For purposes of subsection  (1) of this section, a maker of a check or similar sight order for the payment of money is presumed to know that the check or order, other than a postdated check or order, would not be paid, if:

(a) The maker had no account with the drawee at the time the check or order was issued; or

(b) Payment was refused by the drawee for lack of funds, upon presentation within thirty (30) days after issue, **and** the maker failed to make good within ten (10) days after receiving notice of that refusal. Notice of the refusal may include a citation to this section and a description of this section's criminal penalties and shall be deemed properly addressed when mailed to the address printed or written on the check or sight order or provided by the drawer or maker upon issuance of the check or sight order. The notice, if mailed, shall be deemed received by the addressee seven (7) days after it is placed in the United States mail. The notice may be sent by first-class mail if supported by an affidavit of service setting out the contents of the notice, the address to which the notice was mailed, that correct postage was applied, and the date the notice was placed in the United States mail. A

informing him that his check No. 1010, for $25.00, had been not been honored.  Crawford states that

the Knox County Attorney's Office mailed this notice to the plaintiff "on or about" July 6, 2004

[Record No. 12, p. 4, n.4].[2]

Crawford states that although the Knox County Attorney's office mailed the "10-day notice"

to the plaintiff at the address shown on his check, the "10-day notice" was returned in the mail as

"undeliverable" by the Post Office [*Id*.].  Crawford did not attach to her "Motion to Dismiss" either

a copy of  the "10-day notice" which she claims the Knox County Attorney's Office mailed "on or

about" July 6, 2004, or a copy of the Post Office's subsequent designation that the mailed notice was

"Undeliverable."  Likewise, Knox County Attorney Dixon and the other Knox County Defendants

did not attach either the "10-day Notice" or the Post Office's subsequent return to their "Motion to

Dismiss."  The plaintiff alleges that he never received the "10-day notice"advising him that his check

No. 1010 had been dishonored for lack of funds.

The plaintiff alleges that only two days later, on July 8, 2004, Defendant Tammy Wine, the

Knox County Treasurer, signed a sworn complaint for his arrest for theft by deception regarding the

"cold" check.  None of the defendants dispute that Wine undertook this action on July 8, 2004.  The

plaintiff alleges that on that same day, July 8, 2004, Denise Crawford, the Knox County Trial

Commissioner, determined that Wine's complaint constituted probable cause for an arrest warrant

---

maker makes good on a check or similar sight order for the payment of money by paying to the holder
the face amount of the instrument, together with any merchant's posted reasonable bad check handling
fee not to exceed twenty-five dollars ($25) and any fee imposed pursuant to subsection (5) of this
section.

[2] The Court will refer to the notice provision under this statute as the "10-day notice."

to be issued against him regarding the dishonored check [Crawford Motion, Record No. 12, p. 2]. Crawford signed the warrant for the plaintiff's arrest on July 8, 2004, and set bail at $1,000.00 [*Id*.].

The parties agree that on July 14, 2004, the plaintiff was arrested in the Knox County Courthouse immediately following the DUI trial in which he had defended his brother. They do not dispute that the plaintiff was detained in the Knox County Detention Center between one and two hours before his release on his own recognizance [Complaint, p. 7, ¶ 25; Crawford Motion, p. 2].

There is no dispute that the Knox District Court dismissed the charges against the plaintiff. The characterization of the dismissal, however, appears to be in dispute. The plaintiff's description suggests that the theft-by-deception charge was dismissed as frivolous. He states that "Defendant Knox County Attorney's prosecutor insisted he would not prosecute the charge. The trial judge dismissed the charge in open court." [Complaint, p. 8] Crawford, however, states that the cold-check/theft-by-deception charge against the plaintiff was dismissed *only* after the plaintiff paid the check and all statutory fees [Crawford Motion, pp. 2- 3].

On July 14, 2005, one year to the day after his arrest in Knox County, the plaintiff filed this §1983 complaint. The plaintiff alleges that his arrest on July 14, 2004, was without probable cause and therefore was in violation of the Fourth Amendment. He claims that the Knox County Attorney, Charley Dixon, was the secret moving force behind his arrest, alleging that Dixon's motivation was to punish him in retaliation for his (plaintiff's) zealous defense of his brother against the DUI charge. Plaintiff alleges that there was animosity between him (plaintiff) and Dixon's office.

Plaintiff argues that if the defendants had expended a little more effort, over and above simply automatically mailing the "10-day notice" to him at his address listed on the returned check,

5

they could have located him for purposes of informing him that his check No. 1010 had not cleared and that he had ten (10) days in which to honor it or face prosecution. Specifically, he contends that because he was representing his brother in the Knox District Court and was to go to trial on July 14, 2004, the Knox County Attorney's Office had "actual and constructive" knowledge of his mailing address and phone number [Complaint, p. 24]. He argues that it was simply not reasonable for the defendants to have relied only on the address listed on his dishonored check.

Defendants' Motions to Dismiss

1. "Motion for To Dismiss" [Record No. 12] filed by
Denise Crawford, Knox County Trial Commissioner

Crawford explains that under KRS 24A.100, the Kentucky General Assembly authorized the office of Trial Commissioner in counties where no district judge resides, stating that Knox County is one such county. She states that her powers as Trial Commissioner include but are not limited to issuing search and arrest warrants; committing a defendant to jail or holding him without bail or bond; and accepting guilty pleas and imposing a fine for offenses punishable by fine of $500.00 or less. She states that a trial commissioner's powers are co-extensive with those of a district court judge within the Commonwealth of Kentucky.

Crawford provided the Court with a short version of the relevant facts. Like most of the defendants, the thrust of her motion was dedicated to the legal arguments. She states that the Knox County Attorney's office mailed the "10-day notice" to the plaintiff "on or about" July 6, 2004, and that she signed the arrest warrant against the plaintiff on July 8, 2006. She argues that there was probable cause to issue the arrest warrant and to cause the plaintiff to be arrested eight days later, on July 14, 2004. She further notes that probable cause existed to the extent that the plaintiff admitted in Paragraph 16 of his Complaint that his check No. 1010 was dishonored for insufficient funds. She

6

asserts several legal theories in her defense.

First, citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991), and several other cases, Crawford alleges that dismissal is appropriate under the doctrine of judicial immunity. She argues that judges (and in her case, duly authorized trial commissioners) who perform traditional judicial duties are protected by an absolute immunity from suit. She alleges that her actions satisfied to the two-pronged test, set forth in *Stump v. Sparkman*, 435 U.S. 349, 362 (1978), for invoking judicial immunity. She explains that under the first prong of the *Stump* test, her action in signing the arrest warrant was a function "normally performed by a judge" *Id*. at 362. She next explains that under the second prong of the *Stump* test, she was dealing with the plaintiff in her judicial capacity. *Id*.

Crawford's motion also argues claims on behalf of the prosecutor in this case, Charley Dixon, the Knox County Attorney. She argued Dixon was enjoyed absolute immunity under the doctrine of prosecutorial immunity, citing *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997). She asserts that the immunity bars the plaintiff's individual capacity claims against Charley Dixon, even though the plaintiff alleges that the Knox County Attorney's motives were malicious.

Next, Crawford contends that she and the Knox County Attorney's Office enjoy qualified immunity from suit. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Crawford argues that the plaintiff's construed Fourteenth Amendment claim--that the defendants intended to publicly disgrace him and cause economic harm--is without merit in light of *Albright v. Oliver*, 510 U.S. 266 (1994).

To the extent that the plaintiff alleges that the defendants "negligently" failed to send him the "10-day notice," the defendants counter by stating that negligence is not a constitutional violation. They submit that even if it is a viable claim, it arose on July 8, 2004, but that the plaintiff failed to timely assert the claim within one year, having waited until July 14, 2005, to file suit.

Finally, Crawford argues that the plaintiff's official-capacity claims against her are barred by Eleventh Amendment immunity. Under the Eleventh Amendment, any suit for damages against state officials sued in their *official* capacities would be not be viable, because it would be the same as a suit against the state itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

2. "Motion for To Dismiss" [Record Nos. 16 and 17] filed by
Charley G. Dixon, the Knox Fiscal Court,
Tammy Wine, Donna Smith, and Ancil Hall

Dixon disclaims any direct or personal involvement in the decision to have the plaintiff arrested on July 14, 2004. He asserts that Defendant Donna Smith's "only involvement in this case was in assistance to Ms. Wine in preparing the criminal complaint filed here." [Record No. 17., p. 5]. Defendant Wine, the Knox County Treasurer, states that she filed the "cold check" complaint against the plaintiff. [*Id.*, p.2].

These defendants jointly contend that because the plaintiff admitted in his complaint that his check was dishonored, there was probable cause to have him arrested. Knox County Attorney Dixon contends that it was sufficient for his office to have mailed the "10-day notice" to the plaintiff at the address listed on the returned check. He argues that his office was not required either to have sent the plaintiff the "10-day notice"on July 6, 2004, or to have made an exhaustive search of all of the plaintiff's records to determine his correct address." [Dixon Motion, Record 17, p. 5]

Dixon alleges that pursuant to KRS 514.040(4)(b), the plaintiff was presumed to have

received the "10-day notice" within seven days of its delivery [*Id.*, p. 3].  However, unlike his co-defendant Crawford, Defendant Dixon does not address, refer to, or state in either his "Motion to Dismiss" [Record No. 16] or his subsequently filed amendments thereto [Record Nos. 17 and 18], that the Post Office returned  the "10-day notice" as "Undeliverable."[3]

Dixon and the other defendants argue that the plaintiff has failed to properly allege a valid claim against the Knox Fiscal Court, noting that the plaintiff did not claim that the Knox Fiscal Court had a policy or custom in place which violated the plaintiff's rights.  They construed the complaint as alleging that there was, in fact, a policy in effect regarding the proper means of notification of "cold checks", but that the defendants failed to adhere to or follow that policy.

These defendants generally adopted the various legal arguments raised in Crawford's Motion to Dismiss.  Dixon, Smith, and Hall asserted that prosecutorial immunity shields them from liability, citing *Imbler v. Patchman*, 424 U.S. 409, 420 (1976).

### 3.  "Motion for To Dismiss" [Record No. 17] filed by
### the City of Barbourville, Johnny Mills, and
### unknown Barbourville Police Officers

These defendants jointly submit that the decision to prosecute the plaintiff was solely a "county" activity undertaken and executed by Knox County employees.  Mills denied by affidavit that he has ever been the Chief of Police, as the plaintiff charged in his complaint, and further states that he was not on duty on July 14, 2004, and was in no manner involved in the plaintiff's arrest. The defendants further claim that Officer B. Freeman, who is employed by the Knox County

---

[3]

According to Crawford's motion, the Knox County Attorney's Office mailed that notice to the plaintiff, at the address listed on the dishonored check, "on or about " July 6, 2004.

Sheriff's Department, not the City of Barbourville, was the arresting officer.

### 4.  Plaintiff's Response to Motions to Dismiss [Record No. 23]

The plaintiff responded to the various motions to dismiss by stating that he had no intent to deceive the Knox County 911 Service when he issued the subsequently dishonored check.  He noted that the printout from Fifth Third Bank--attached to the various motions to dismiss--reflected that although at one point a $708.09 payroll check had been dishonored, that same bank then re-credited the same check the next day.  The plaintiff further questioned why none of the defendants had attached to their motions a copy of the returned "10-day notice" or the affidavit necessary to obtain the arrest warrant against him.

He further questioned how, if there was in fact a presumption that he had received the "10-day notice" seven days after its alleged mailing on July 6, 2004, the defendants could have acted in good faith by obtaining an arrest warrant against him only two days later, on July 8, 2004.  He noted that the lapse of time between July 6, 2004 (date notice was allegedly mailed) and July 8, 2004 was less than the ten-day period he had in which to honor the check, under K. R. S. 514.040(4)(b).

Next, he contended that as a matter of courtesy, the defendants should have and could have notified him that his check had not been honored by means less embarrassing than a public arrest in the Knox County Courthouse.  Plaintiff argued that as County Attorney, Defendant Dixon was involved in the decision to prosecute him because Dixon approved all activity in his office.

Plaintiff admitted that he had insufficient information to conclude that Defendant Johnny Mills was involved in his arrest.  Plaintiff maintained that City of Barbourville police did in fact arrest him, and denied that Deputy Sheriff Freeman arrested him.  He stated that Freeman noted on

10

the return of the arrest warrant that he "Served Warrant Only."

### 5. Crawford's Reply to Plaintiff's Response [Record No. 24/25]

Crawford reiterated the legal arguments contained in her original motion to dismiss.  She also asked the Court to strike the plaintiff's response as untimely filed.

DISCUSSION

Standard of Review

Fed. R. Civ. P. 12(b) provides for the dismissal of claims and parties for seven listed reasons. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001).  In addition to the allegations in the complaint, the Court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.  *Id*. at 360-61; *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003), *cert. denied*, 540 U.S. 1183, 124 S. Ct. 1424 (2004).  Well-pled allegations must be taken as true and must be construed most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Despite this liberal standard of review, the plaintiff is required to provide more than the bare assertion of legal conclusions.  "[A] plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Uttila v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W. D. Tenn.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

11

The defendants are correct that the plaintiff's December 27, 2005 Response was untimely. However, they overlook the fact that even if the plaintiff had filed *no* response to their motions, the Court could still consider the allegations contained in the original complaint to determine if dismissal under Rule 12 is appropriate.  The Court will not strike the plaintiff's response even though it was late.  The defendants "Motion to Strike Plaintiff's Response" [Record No. 23 and 24] is denied.

1.  Claims Against Knox County Fiscal Court;
Unknown Knox County 911 Services;
City of Barbourville; and Unknown Barbourville Police Officers

While the plaintiff has named Knox County Fiscal Court and the City of Barbourville as defendants,[4] he has not alleged a legally valid municipal liability claim against either entity.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court "conclude[d] that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory."  *Id*. at 691.

*Monell* holds that there must be a direct causal link between a county policy and the alleged constitutional violation such that the county's deliberate conduct can be deemed the moving force behind the violation.  *Id*.  In order "[t]o establish municipal liability pursuant to §1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [ ] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.'"  *Shamaeizadeh v.*

---

[4]  The Knox County 911 Service is presumably an arm of the Knox County Fiscal Court, and the Barbourville Police Department is presumably an arm of the City of Barbourville.

12

*Cunigan*, 338 F.3d 535, 556 (6th Cir.2003) (quoting *Monell*, 436 U.S. at 690-91), *cert. denied*, 541 U.S. 1041 (2004). *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986) ("A municipality may be held liable under §1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal 'policymaker' directly caused the rights violation.").

The Knox County Fiscal Court contends that the plaintiff has not articulated a claim against it which satisfied the requirements set forth under *Pembaur*. The City of Barbourville argues that neither it nor any of its agents were involved in the arrest of the plaintiff, laying all of the responsibility at the hands of its county co-defendants. A careful review of the complaint and the plaintiff's response reveals that the plaintiff alleges only that several of the individuals whom he named as defendants undertook specific actions which violated his Fourth Amendment rights to be free from an arrest without probable cause and unreasonable seizure. The plaintiff did not, however, allege that either municipal entity had a *policy or custom* in place which violated his rights.

The plaintiff alleged in a very general manner that the individually named defendants who were employed by the Knox County Fiscal Court or the Knox County Attorney's Office were acting "under color of their state authority and under color of statutes, regulations, customs, and usages of the City of Barbourville and County of Knox, Kentucky." [Complaint, ¶¶ 7- 12]. The plaintiff did *not*, however, describe or identify any specific "policies and customs" that were the cause of the injuries of which he complains. He simply did not specifically allege that any broad, unidentified municipal policies, customs or usages caused his rights to be violated. The Court agrees with the Knox County Fiscal Court that what the plaintiff essentially complained about was a deviation, by certain individual defendants, from the usual procedures in effect to prosecute "cold check" cases.

13

A plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must identify the policy, connect the policy to the municipality itself, and show that the his injury was incurred because of the execution of that policy. *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004); *Sigley v. City of Parma Heights*, 437 F.3d 527, 538 (6th Cir. 2006). The plaintiff's allegation of wrongdoing relates only to the individually named Knox County officials and unknown city police officers– not to any particular policies or customs of either the Knox County Fiscal Court or the City of Barbourville. Accordingly, the claims against these *municipal entities* must be dismissed

2. <u>Official Capacity Claims Against Crawford, Dixon</u>
<u>Wine, Smith, Mills and Hall</u>

The plaintiff's official capacity claims against these defendants must be dismissed. When government employees like the these defendants are sued in their official capacities, the action "is equivalent to a suit against the entity on whose behalf [the employees] act[ ]," here, the Knox County Fiscal Court and/or the City of Barbourville. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir.2005) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. at 690). In turn, municipalities like the Knox County Fiscal Court and the City of Barbourville "'cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Id*. (quoting *Monell*, 436 U.S. at 691).

As discussed previously, municipalities incur § 1983 liability only when a custom or policy of the municipality contributed to or resulted in the plaintiff's injuries. *Id*; *See also Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005). Here, the plaintiff must allege that the actions taken against him was part of a policy or custom of the Knox County Fiscal Court and/or the City of Barbourville, and that these entities had on prior occasions ignored, and were on notice of, the type of unconstitutional action taken against him. *See Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)

14

(where plaintiff who was seized on the basis of an attempted suicide report brought § 1983 action against sheriff and two deputies alleging that they violated his rights against an unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments, he was required to show prior instances of unconstitutional conduct demonstrating that the County had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.)

The Court has already concluded that the plaintiff is not alleging that issuance of the criminal complaint against him, and his subsequent arrest, occurred as a result of a policy or custom of either the Knox Fiscal Court or the City of Barbourville.  In the absence of that requisite claim, dismissal of the *official* capacity claims against these defendants is proper.[5]

### 3.  Individual Capacity Claims Against Denise Crawford

The plaintiff's individual capacity claims against Crawford must be dismissed.  A plaintiff may recover damages against a judge only when he or she has acted in "clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), quoting *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L .Ed. 464 (1871).  Immunity extends to complaints arising out of judicial conduct in criminal as well as civil suits.  *Pierson v. Ray*, 386 U.S. 547 (1967).  Furthermore, the common law immunity of judges applies to suits under 42 U.S.C. §1983, alleging deprivations of constitutional rights.  *Pierson v. Ray*.

---

[5]

*See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted).  *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir.1993) (holding that a municipal prosecutor acts as an arm of the state in prosecuting or declining to prosecute state criminal offenses)."

"[A]bsolute immunity is not available if the alleged wrongful conduct was committed pursuant to a non-judicial act, *i.e.*, one not taken in the judge's judicial capacity, such as terminating an employee." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (citing *Forrester v. White*, 484 U.S. 219, 229-30, 108 S .Ct. 538, 545-46 (1988)).   In *Stump*, the Supreme Court established a two-prong test to determine whether an act is "judicial." *Id*. at 362, 98 S. Ct. 1099.

First, the court must consider whether the act in question is a function that is "normally performed by a judge." *Id*.  Under this inquiry (the functional approach), a court is required to examine the nature and function of the act, not the act itself.  The Supreme Court reformulated this inquiry in *Mireles v. Waco*, 502 U.S. 9 , 11-12 (1991) (per curiam), holding that even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge.  *Id*. at 13, 112 S. Ct. 286.

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity.  *Id*. at 12.  In examining the functions normally performed by a judge, this Court has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir.1997) (citing *Antoine*, 508 U.S. at 435-36, 113 S. Ct. 2167).   Conversely, whenever a judge's action is not an adjudication between the parties, it is less likely to be deemed judicial.  *Cameron*, 38 F.3d at 271.

Here, Trial Commissioner Crawford was clearly vested by statute with the power to issue an arrest warrant.  Although the essence of his complaint is that Crawford signed the arrest warrant without any probable cause, the Court concludes that Trial Commissioner Crawford clearly acted within her jurisdiction by signing the arrest warrant.  Crawford also acted within her judicial capacity

16

as presiding judge and performed "truly judicial acts"--which involved the resolution of the dispute between the Commonwealth of Kentucky and the plaintiff--when she signed the arrest warrant on July 6, 2004.  Although (as discussed herein) it is unclear why the Knox County officials initiated arrest procedures against this plaintiff *two* days into the ten-day period for honoring the refused check, Crawford's conduct is protected by judicial immunity and is not actionable under §1983.[6]

To the extent the plaintiff alleges that Crawford acted *maliciously* toward him by signing the arrest warrant, that claim fails as well.   Judicial action, even if done maliciously, or even if it was in excess of his or her authority, will not subject a judge to liability.  *Stump* at 485 U.S. 356-357. *See also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam) (immunity is available even if a judge acts erroneously, corruptly, or in excess of his jurisdiction), and *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) (fact that judge was alleged to have acted in a conspiracy and committed grave procedural errors was insufficient to avoid absolute judicial immunity).

Finally, the claim that Crawford *conspired* with the Knox County Attorney's office prosecutor to violate his (plaintiff's) rights must also be dismissed because of the doctrine of judicial immunity.   Such a claim is without a legal basis.   In *McArdle v. Tronetti*, 961 F.2d 1083 (3d Cir. 1992), the court addressed a similar claim and noted:

> [I]f persons are immune from Section 1983 liability for their acts by virtue of their function in the judicial process they must be immune from Section 1983 liability for conspiring to do those acts. . .(citations omitted). Otherwise, judges, prosecutors, witnesses and others "on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial

---

[6]

The Supreme Court has specifically held that even the commission of grave procedural errors, including those involving due process, do not constitute judicial action taken in the clear absence of all jurisdiction.  *Stump*, 435 U.S. at 359.  *See Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), in which the Sixth Circuit held that a judge's failure to inform the plaintiff of his constitutional rights, though a grave procedural error, did not subject him to damages.

immunity was designed to avoid."

*McArdle v. Tronetti*, 961 F.2d at 1085.  Thus, absolute judicial immunity bars all of the plaintiff's

claims against Crawford.

### 4.  Individual Capacity Claims Against Charley Dixon

Defendant Dixon alleges that he was not personally involved in the decision to prosecute the

plaintiff on the "cold-check" charge.  Plaintiff countered that Dixon was not only aware of, but

condoned, the actions of his employees, including Defendant Smith who assisted Tammy Wine, the

Knox County Treasurer, in preparing the criminal complaint filed against the plaintiff.

The theory of *respondeat superior* cannot provide the basis for liability in §1983 actions.

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 1978); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th

Cir.2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984).  Nor

can the liability of supervisors be based solely on the right to control employees, *Bellamy*, 729 F.2d

at 421, or "simple awareness of employees' misconduct," *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d

at 421.  Furthermore, "a supervisory official's failure to supervise, control or train the offending

individual is not actionable unless the supervisor 'either encouraged the specific incident of

misconduct or in some other way directly participated in it.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir.1999) (quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982)).

The plaintiff alleges in conclusory fashion that Dixon condoned and encouraged his arrest

without probable cause.  Even if Dixon did encourage the actions which resulted in the decision to

arrest the plaintiff,  there would be another barrier to the plaintiff's claims against Dixon.  As Knox

County Attorney, he enjoys prosecutorial immunity because he acted within the scope of his duties

in initiating and pursuing a criminal prosecution.  *Imbler v. Patchman*, 424 U.S. 409 (1976).  *See*

*also Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989) (prosecutors were absolutely immune from claim they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury). A prosecutor enjoys absolute immunity from suit under §1983 when the complained-of activity is "intimately associated with the judicial phase of the criminal process" or is performed in a 'quasi-judicial" role. *Imbler* 424 U.S. at 430.

### 5. Claims Against Johnny Mills

As the plaintiff has conceded in his Response that he was without a sufficient factual basis to assert a claim against Johnny Mills, the claims against him will be dismissed.

### 6. Claims Against Tammy Wine, Donna Smith, and Ancil Hall
#### A. Whether there was a "Favorable Termination" of the Plaintiff's "Cold Check" Charge

There are two issues which none of the parties have sufficiently developed. These issues cause the Court to deny the "Motion to Dismiss"on behalf of Tammy Wine and Donna Smith.[7]

As noted previously, the plaintiff alleges that after being arrested and appearing before the Knox District Court on the cold check charge, the Knox County Attorney's office stated that it had no intention of prosecuting the plaintiff on the cold check charge. Plaintiff states that the charge against him was dismissed. Defendant Crawford, however, states that the charge was dismissed only after the plaintiff paid the amount of the dishonored check and other fees and thus may have admitted liability in some manner. He may or may not have, but none of the parties provided the

---

[7]

Defendant Ancil Hall states in his Affidavit [Record No. 17, Attachment] that he had no involvement with the filing of the criminal complaint against the plaintiff. In his December 27, 2005 Response, the plaintiff did not dispute Hall's claim, or otherwise address Hall's involvement. Accordingly, the Court interprets the plaintiff's failure to refute Halls' affidavit as an admission that Hall was not involved, and will dismiss the plaintiff's claims against Hall.

Court with a copy or other evidence of the dismissed "cold-check" charge, so the Court is unable to determine at this time if the plaintiff even had a "favorable termination" of the cold-check charge.

This Court, in *Cissell v. Hanover Ins. Co.*, 647 F. Supp. 757 (E.D. Ky. 1986), addressed and defined the parameters of maintainable federal §1983 claims for malicious prosecution. The Court cited *Singleton v. City of New York*, 632 F.2d 185, 194-195 (2d Cir. 1980), stating as follows:

> It is well established that a prerequisite for recovery in both a common law malicious prosecution action and a federal §1983 claim analogous to such action is proof that the previous prosecution alleged to be malicious was terminated in favor of the present plaintiff. *Singleton v. City of New York . . . Lendes v. Sutter*, 621 F. Supp. 1197 (D. N.J. 1985).

*Cissell* at 758.

Citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981), *Cissell* examined the six elements required under Kentucky law for a malicious prosecution action, the third being "the termination of such proceedings [either civil, criminal or administrative] in [the original] defendant's favor."*Cissell* at 758. There must be a demonstration that the criminal proceeding is "terminated in favor" of the accused. According to *Singleton*, "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate that the accused is not guilty." *Id.* at 193.[8] *See also MacFawn v. Kresler*, 666 N.E.2d 1359 (N.Y. 1996).

The distinction is described well in *Feinberg v. Townsend*, Ky. App., 107 S.W.3d 910, 911

---

[8]

There is some case law which imposes a slightly less stringent requirement for establishing "termination in favor of the accused": *Smith-Hunter v. Harvey*, 734 N.E.2d 750 (N.Y. 2000), held that a dismissal of a criminal charge on statutory speedy trial grounds based upon prosecutor's inaction, constituted a 'favorable termination." *Cf. Martin v. Adler*, 515 N.Y.S.2d 400, 405 (N.Y. Sup. Ct. 1987) (dismissal for failure to prosecute was not adjudicated on the merits; thus, malicious prosecution claim was barred). The *Smith-Hunter v. Harvey* opinion noted, however, that if a criminal charge is dismissed out of mercy requested or *accepted by the accused*, there is no "favorable termination." *Id.* at 753 (Emphasis added).

(2003). That case arose from a legal malpractice action filed against Feinberg by Townsend, which alleged that Feinberg had been negligent in the course of his representing Townsend and Townsend's company, Riverboat Development, Inc. (RDI), during joint venture negotiations with Caesars World. Feinberg counterclaimed, alleging that Townsend had breached the contract between them and that he was entitled to 240 shares of RDI. After mediation, it was agreed that Townsend would dismiss the claims against Feinberg and that Feinberg would receive 50 shares of stock instead of 240.

Feinberg then brought an action against Townsend and Miller, who acted as counsel for Townsend on the malpractice action, alleging wrongful use of civil proceeding. The Jefferson Circuit Court determined that Feinberg could not satisfy the elements of wrongful use of civil proceedings as set forth in the Restatement (Second) of Torts at §660, because he could not show that the underlying action was terminated in his favor. Feinberg appealed. The Kentucky Court of Appeals ruled that because Feinberg and Townsend had entered into a settlement agreement in which Townsend dismissed his malpractice action, and Fienberg compromised on his counter-claim for breach of contract, there had been no "favorable termination" of the legal malpractice action.

The Kentucky Court further noted that "one claiming wrongful use of civil proceedings must strictly comply with the elements of the tort. *Prewitt v. Sexton*, Ky., 777 S.W.2d 891 (1989); *Broaddus v. Campbell*, Ky. App., 911 S.W.2d 281 (1995)." *Feinberg*, 107 S.W.3d at 912. The court in *Feinberg* further stated that:

> The *Broaddus* case, which Feinberg vigorously argues has no application here, adopts the language of Restatement [of Torts] §660, "Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." In *Broaddus*, the claimant brought suit after a compromise led to the dismissal of criminal charges against him. Feinberg argues that because *Broaddus* involved a criminal action, and because the claimant in *Broaddus* stipulated probable cause as part of the compromise, that case is inapplicable in this circumstance. While we

acknowledge that *Broaddus* is not a perfect fit, we disagree that the point that "having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor" is not applicable. Here, the case was referred to mediation and by mutual agreement the parties reached a settlement. *We believe that as a matter of law, the proceedings cannot be said to have terminated in Feinberg's favor, as the settlement was clearly the product of a mutual agreement and not the one-sided dismissal present in the Raine case, which Feinberg asserts is applicable here.* We disagree that *Raine* stands for the proposition that one may settle an action and still bring an action for wrongful use of civil proceedings. Raine did not involve a settlement but a voluntary dismissal of the action, accomplished by an agreed order."

*Feinberg*, 107 S.W.3d at 912.  (Emphasis Added).

Applying the rationale of *Feinberg* and *Broaddus* to the instant proceeding, there is simply not enough information in the record to indicate if the plaintiff "bought his peace" by admitting in some manner that he had violated Kentucky's "cold-check" statute, or if there was a one-sided dismissal of the cold-check charge.

### B. Factual Dispute as to Sufficiency of "10-day Notice"

There is a second factual issue affecting whether the remaining two defendants (Wine and Smith) enjoy qualified immunity with regard to the individual capacity claims asserted against them.

The relevant inquiry for applying qualified immunity should first focus on whether an objectively reasonable official would believe that the action in question was lawful.  *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991).  "Under this test, an official will be immune 'if officers of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights."  *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991) (citations omitted); *Johnson v. Laccheo*, 935 F.2d 109 (6th Cir. 1991).  Further, the question of whether an official is protected by qualified immunity does not turn on the subjective good faith of the official, but instead on the

objective legal reasonableness of the official's actions, assessed in light of the legal rules that were clearly established at the time the official took the action in question.  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 998-999 (6th Cir. 1994).

The record reveals a  factual dispute concerning actions reasonableness of Wine and Smith's actions.  That dispute renders a dismissal under Rule 12 inappropriate at this time.  Assuming as true: (a) that the Knox County Attorney's Office mailed the "10-day notice" to the plaintiff on July 6, 2004; (b)  that K. R. S. 514.040(4)(b) would have given the plaintiff ten days in which to honor the "cold" check;  and (c) that according to the statute, receipt of the "10-day Notice" would not have been presumed until after the passage of seven days, the plaintiff would have had until July 13, 2004 in which to honor the "cold" check.[9]

However, these defendants sought an arrest warrant on the *second day* (July 8, 2004) of that seven-day period, while the plaintiff's time to comply with K. R. S. 514.040(4)(b) was still running. The arrest warrant was not served until the conclusion of the trial in Knox District Court in which the plaintiff was defending his brother.  How could these defendants know *on July 8, 2004*: (a) whether the plaintiff would or would not receive his "10-day notice,"allegedly mailed on July 6, 2004; or (b) if received, whether the plaintiff would or would not honor the "cold"check after the expiration of the "10-day notice"? [10]  None of the defendants provided to the Court either the "10-day

---

[9]

  The plaintiff might possibly have had until July 14, 2004 to honor the "cold check" if the day of mailing (July 6, 2004) is excluded from the computation of time, *See* Fed. R. Civ. P. 6.

[10]

  The Court rejects the defendants' claim that the plaintiff was not entitled to any notice of the "cold" or  refused check [Motion, Record No. 17, p. 5, §4].  The language of K. R. S. 514.040(4)(b) states that in order to prove theft by deception on a "cold check," **two** things must be shown: first, that the bank refused to honor the check for lack of funds, **and** second, that the maker of the "cold check"refused to honor it after being served with a notice giving him ten days to do so.  *See also Patterson v. Commonwealth*, Ky. App., 556 S.W.2d 909, 910-911 (1977) (rebuttable presumption

23

notice" claimed to have been mailed to the plaintiff "on or about" July 6, 2004 (including the Affidavit of Service required in KRS 514.040 (4)(b)), or the Post Office's return stating the notice was not deliverable.  The record requires further development on these factual issues.

<u>CONCLUSION</u>

Accordingly, it is **ORDERED** as follows:

(1)     The "Motion for To Dismiss" [Record No. 12] of Defendant Denise Crawford, Knox County Trial Commissioner, is **GRANTED** and the plaintiff's official and individual capacity claims against Crawford are **DISMISSED**.

(2)     The "Motion to Dismiss" and "Amended Motion to Dismiss" of Defendants Knox County Fiscal Court, Tammy Wine, Donna Smith, Ancil Hall, and Charley G.  Dixon [Record Nos. 14 and 16] are **GRANTED in PART and DENIED in PART**:

(A)     The "Motion to Dismiss" is **GRANTED** as to Defendants Knox County Fiscal Court, Charley G.  Dixon, and Ancil Hall.

(B)     The plaintiff's *official* and *individual* capacity claims against Charley G. Dixon and Ancil Hall are **DISMISSED**.

(C)     The "Motion to Dismiss" is **DENIED** as to the *individual* capacity claims of

---

that a maker of a "cold" check knows his check will not be honored arises if a bank refuses payment on a check for insufficient funds **and** the maker fails to honor the check within ten days of receiving notice of the bank's refusal).

In both *Patterson* and in *Crawley v. Commonwealth*, 2003 WL 22149310) (Ky.) (Unpublished), the defendants convicted of theft by deception acknowledged receiving the "10-day Notice" from the banks.

The Court also rejects the plaintiff's claim that the Knox County Attorney was required (out of courtesy)  to have mailed him the "10-day notice" to any address other than the one on the "cold" check.  K. R. S. 514.040(4)(b) clearly states that the notice is only required to be sent to the address listed on the "cold" check.

Defendants Tammy Wine and Donna Smith, and those claims will go forward;

       (C)    The "Motion to Dismiss" as to the *official* capacity claims against Defendants Tammy Wine and Donna Smith are **GRANTED** and those claims are **DISMISSED**.

       (3)    The "Motion for To Dismiss" and the "Amended Motions to Dismiss" of Defendants City of Barbourville, Kentucky; Johnny Mills and unknown Barbourville Police Officers" [Record Nos. 18, 19 and 21] are **GRANTED**.

       (4)    The "Motion to Strike Plaintiff's Response" filed by Defendants Knox Fiscal Court, Tammy Wine, Donna Smith, Ancil Hall, and Charley G. Dixon [Record No. 23] is **DENIED**.

       (5)    The "Motion to Strike Plaintiff's Response" filed by Defendant Denise Crawford [Record Nos. 24 and 25] is **DENIED**.

       Dated this 21st day of March, 2006.

Signed By:

***Karen K. Caldwell***

**United States District Judge**

25